JOY COSSICH LOBRANO, Judge.
11 On March 4, 2004, the State charged Norman Pete with two counts of forcible rape, violations of La. R.S. 14:42.1, and one count of second degree kidnapping, a violation of La. R.S. 14:44.1. Pete pled not guilty at his arraignment on March 9, 2004. On April 21, 2004, the trial court found probable cause and denied Pete’s motion to suppress the identification.
On January 14, 2008, the trial court denied his motions to quash the bill of information. Pete pled guilty as charged pursuant to State v. Crosby, 338 So.2d 584 (La.1976), reserving his right to appeal the court’s denial of his motion to quash. On that same date, Pete waived any sentencing delays and was sentenced to serve twenty years at hard labor on each of the three counts, the first two years of each sentence to be served without benefit of parole, and with the sentences to run concurrently, and with credit for time served. The State filed a multiple bill charging Pete as a second offender based on a prior rape conviction. Pete pled guilty to the multiple bill on January 10, 2011. The court then vacated the original sentences and sentenced Pete under the multiple bill statute, La. R.S. 15:529.1, to twenty years at hard labor on all three counts, i.e. both counts of forcible rape and the count of second degree kidnapping, with the sentences to run concurrently and 12with credit for time served. On November 3, 2011, the trial court granted Pete’s motion for an out-of-time appeal.
At the motion hearing, Detective Joseph Goines, of the New Orleans Police Department sex crimes division, testified that on August 2, 2003, at around 6:30 in the morning, he was told to contact the Third District Cops Unit in, the St. Bernard Housing Development. He was advised that there was a sexual assault victim at the complex. As Det. Goines traveled to the complex, he was advised that the victim was being transported to Charity Hospital. Det. Goines then met the victim at Charity and spoke to her about her assault.
The victim told Det. Goines that she went to the Vibe Club on Esplanade Avenue near North Claiborne Avenue earlier that morning, sometime after midnight. The victim was dropped off at the club by a female friend, who was supposed to return to the club to pick her up between 4 a.m. and 4:30 a.m. While at the club, the club management handed the victim a long-stemmed yellow rose.
The victim left the club around 4 a.m. and looked for her friend. Her friend was not outside. The victim called her friend’s house, but her friend was not home. At that point, the victim noticed several men outside of the club, which made the victim feel unsafe. The victim decided to walk to the nearest bus stop and take the St. Bernard bus home.
While whiting outside, the defendant, who was unknown to the victim, drove up to the victim in a burgundy car. The defendant asked the victim if she was “dating.” The defendant then asked the victim where she was going, and she replied that she was going home. She told the defendant that she lived in the St. Bernard Housing Development, and she got into his car. The victim believed the defendant was taking her home, though she did not *356 give him a specific address |3within the complex. Instead of taking her home, the defendant began speeding, before he stopped his vehicle along the Franklin Avenue overpass, at a dead end.
The victim pleaded with the defendant to take her home, but he pulled into the vacant area, indicating that he was going to turn around. Instead, however, he parked the vehicle. The victim opened the door to get out, and the defendant hit her in her chest in response. The defendant told her to close the door and to undress. The victim told Det. Goines that she was afraid of the defendant, so she complied with his orders, closed the car door, and undressed. The defendant undressed and reclined the victim’s seat, got on top of the victim, and vaginally raped her. The defendant then sat back in the driver’s seat and forced the victim to perform oral sex on him. Upon completion of this act, the defendant once again crawled over to the passenger side of the vehicle and vaginally raped the victim again. Throughout the ordeal, the victim told the defendant that she did not want to be there and that she wanted to go home. At the conclusion, the defendant ordered the victim to get dressed, and she complied. She then took the long-stemmed yellow rose she received while at the Vibe Club and dropped it out of the car window. The victim told Det. Goines that the reason she did not scream during the rapes was because there was a train passing at the time.
Thereafter, the defendant took the victim home to the St. Bernard Housing Complex. The victim got out of the vehicle, went inside the home where she had directed the defendant to take her, and called the police. The victim was then taken to Charity Hospital, where she underwent a sexual assault exam. The victim described to Det. Goines the area where she had been taken by the defendant and where she dropped the long-stemmed yellow rose. Det. Goines then went to the exact location the victim had described to him, walked around the area, and found |4a long-stemmed yellow rose. At that point, Det. Goines called the crime lab. A composite drawing of the defendant was subsequently made and distributed.
During that subsequent Mardi Gras season, on February 18, 2004, Det. Goines received a call from another officer, advising that the victim had pointed out her alleged perpetrator, the defendant. Apparently, the victim was in the 1700 block of First Street, when she observed a red vehicle carrying the defendant, whom the victim recognized as being her assailant. The defendant was subsequently arrested, and a search warrant was issued to collect DNA evidence from the defendant. At the time of the preliminary hearing, Det. Goines did not know the status of the DNA testing.
On cross-examination, Det. Goines testified that the victim told him that when the defendant first pulled up to her and asked her if she was “dating,” he then told her that she was dressed as a prostitute. In addition, Det. Goines testified that he did not see any visible signs of an altercation on the victim’s body.
After Det. Goines testified, the State called the victim to take the stand. Upon calling the victim to testify, it became clear to defense counsel that the victim had been sitting in the court room during Det. Goines’ testimony. Defense counsel complained to the judge about the fact that the victim was allowed to sit through Det. Goines’ testimony without first indicating to him that she was in the courtroom. Defense counsel then requested that the witnesses be sequestered for the remainder of the hearing.
*357 The victim was later called to the stand. Her testimony corroborated that of Det. Goines, and the trial court found probable cause.
By his sole assignment of error, counsel requests a review of the record for errors patent. Counsel complied with the procedures outlined by Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), as interpreted by this Court in State v. Benjamin, 573 So.2d 528 (La.App. 4 Cir.1990). Counsel filed a brief complying with State v. Jyles, 96-2669 (La.12/12/97), 704 So.2d 241. Counsel’s detailed review of the procedural history of the case and the facts of the case indicate a thorough review of the record. Counsel moved to withdraw because he believes, after a conscientious review of the record, that there is no non-frivolous issue for appeal.
As per State v. Benjamin, supra, this Court performed an independent, thorough review of the pleadings, minute entries, bill of information, and multiple bill in the appeal record. A review of the record reveals one patent error with the defendant’s sentencing under the multiple bill statute. The record indicates that the State only filed a multiple bill against the defendant for committing one count of forcible rape, charging that he also has a prior conviction for forcible rape. However, the trial court vacated defendant’s original sentences and resentenced him under the multiple bill statute to twenty years on each of the three counts to which he pled guilty, i.e. two counts of forcible rape and one count of second degree kidnapping. Because the State only charged the defendant as a multiple offender for one of his forcible rape convictions in the instant case, the trial court erred in enhancing the defendant’s sentences as to his convictions for the second forcible rape count and the count of second degree kidnapping. Accordingly, we hereby vacate the enhanced sentences for defendant’s convictions on the second forcible rape count and on the second degree kidnapping count, and remand this case for resentencing.
The defendant also filed a pro se brief, asserting four assignments of error. At the outset, it is noted that “[i]t is well settled that entry of an unqualified plea of | figuilty waives all non-jurisdictional defects occurring prior thereto, and precludes review thereof either by appeal, or where appeal is unavailable, by supervisory review.” State v. Sellers, 2004-1922, 2004-1923, p. 5 (La.App. 4 Cir. 4/20/05), 902 So.2d 418, 421 (quoting State v. Moore, 420 So.2d 1099, 1100 (La.1982)).
■ In his first pro se assignment of error, he argues that he was denied effective assistance of counsel at the probable cause hearing. Specifically, the defendant argues that his attorney failed to object to the victim’s-testimony after it was discovered that the victim was sitting in the courtroom during Det. Goines’ testimony. Because this assignment of error involves a non-jurisdictional defect, this Court is not required to entertain it. See, Sellers, p. 6, 902 So.2d at 421. Moreover, claims of ineffective assistance of counsel are more properly addressed in an application for post-conviction relief, filed in the trial court, where a full evidentiary hearing can be conducted. Id.
In his second pro se assignment of error, the defendant argues that he was denied a fair probable cause hearing. The defendant appears to argue that he was denied a fair probable cause hearing because his counsel failed to object to the victim’s testimony after it was discovered that the victim was sitting in the courtroom during Det. Goines’ testimony. Because this assignment of error involves a non-jurisdictional- defect, this Court is not *358 required to entertain it. See, Sellers, p. 6, 902 So.2d at 421.
In his third pro se assignment of error, the defendant argues that he was denied court-ordered “liberty” without due process of law. In this assignment of error, the defendant appears to argue that, despite the fact that it was ordered that he be released from custody on December 13, 2006, due to a speedy trial violation, he was not released because his “hired counsel conspired with the District ^Attorney’s Office, the Sheriffs Office, and, the Louisiana Department of Probation and Parole, to keep [him] in jail.” Because this assignment of error involves a non-jurisdictional defect, this Court is not required to entertain it. See, Sellers, p. 6, 902 So.2d at 421.
In his fourth pro se assignment of error, the defendant argues that the trial court erred when it denied his motion to quash the bill of information. As per La. C.Cr.P. art. 536, this Court cannot hear any ground for reversal not stated in the original motion to quash. The defendant filed two motions to quash. One motion dealt with only the form of count three on the bill of information. The trial court denied that motion. The second motion alleged a constitutional violation of defendant’s due process right to a speedy trial, as per Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). It also included a general allegation that the State failed to bring him to trial within the time limitations of La. C.Cr.P. art. 578. In addition, the second motion identified the fact that on December 13, 2006, the trial court ordered the defendant be released due to a violation of his statutory rights to a speedy trial, but that the release was never effectuated due to the serious nature of the crimes. The trial court denied that motion as well.
Here, the defendant urges only that the trial court erred by appearing to grant his release under La.C.Cr.P. art. 701, and then refusing to do so because of the serious nature of the charges. This argument has no merit, as Article 701 does not provide a basis to quash an indictment. Rather, a violation of Article 701 results in the release of the accused or discharge of his bond obligation pending trial. Any violation of Article 701 became moot when the defendant entered his Crosby plea.
For the reasons stated above, we affirm the defendant’s convictions on two counts of forcible rape and one count of second degree kidnapping. We affirm the | Kdefendant’s sentence as a multiple offender as to his conviction on one count of forcible rape. We vacate the enhanced sentences as a multiple offender for his convictions on the second count of forcible rape and second-degree kidnapping, and remand this case for resentencing.
CONVICTIONS AFFIRMED; SENTENCE AS MULTIPLE OFFENDER AS TO COUNT ONE OF FORCIBLE RAPE AFFIRMED; SENTENCES AS MULTIPLE OFFENDER AS TO COUNT TWO OF FORCIBLE RAPE AND SECOND DEGREE KIDNAPPING VACATED; REMANDED FOR RE-SENTENCING